[Civ. No. 7736. Third Dist. Apr. 26, 1950.]

W. E. MAYES, Appellant, v. ROSA L. KUHN, as County Auditor, etc., Respondent.

Edmund M. Moor, District Attorney, for Appellant.

Curtiss E. Wetter for Respondent.

VAN DYKE, J.—Petitioner, W. E. Mayes, who, during the period with which we are here concerned, was a member of the Board of Supervisors of the county of Tehama, filed a petition in mandate in the Superior Court of Tehama County. He alleged that during the period from January 1, 1948, to and including June 30, 1948, he had used his private automobile in the performance of his official duties of inspecting county roads; that he had traveled a distance of 2,500 miles in the performance of those duties, and that by the terms of the Collier-Burns Act of 1947 [Stats. Ex. Sess. 1947, p. 3788], section 2010, he was entitled to payment at the rate of six cents per mile for each mile so traveled. Respondent herein, Rosa L. Kuhn, is the auditor of Tehama County, and petitioner alleged proper demand upon her as such auditor for the payment of said mileage totaling $150, and her refusal to make such payment. The warrant presented to the auditor, a copy of which is an exhibit attached to the petition, discloses that the stated reason for such refusal was that such payment would be contrary to the charter of Tehama County in that such charter prohibits payment of mileage to supervisors. The superior court issued an alternative writ directing the auditor to show cause why the warrant should not be paid. Thereafter respondent Kuhn moved the court to quash the alternative writ upon the ground that the petition did not state facts sufficient to have warranted the issuance of the writ. The trial court granted this motion, holding in substance that the Tehama County charter prohibited the paying of any mileage to members of the board of supervisors of that county. From the order granting the motion petitioner has appealed.

In order to state the legal issues presented here, it is necessary to state in considerable detail the pertinent constitutional, statutory and charter provisions.

Section 7½ of article XI of the state Constitution provides for the adoption of county charters. *Inter alia* it declares that such charters shall provide for boards of supervisors and for their compensation, and it is declared that when a county charter has been adopted and approved by the Legislature the general laws adopted by the Legislature in pursuance of section 5 of said article XI shall, as to such county, be superseded by the charter as to matters for which it is competent to make charter provision, "and for which provision is made."

Tehama County adopted a charter in 1917. In 1946 it amended its charter. Prior to this amendment the charter had provided that the supervisors should receive a salary of

$1,200 per year and that this compensation should "be in full for all services, mileage, transportation and expenses within the County of Tehama." In 1946 the charter was amended, eliminating the provision for supervisors' salaries. The result was that the charter made no provision for such salaries. During the regular session of the 57th Legislature in 1947, this charter as amended was before the Legislature for approval, and the Legislature was also considering the situation thus presented with regard to supervisors' salaries. Responsive to this situation the Legislature enacted a statute (chap. 13, p. 487) which provided that in counties of the 41st class (Tehama) the annual salary of each supervisor should be $1,200. The act was declared to be an emergency measure and the Legislature made the following statement of facts constituting the necessity: "The compensation of officers in Tehama County, the only county of the forty-first class, is now fixed by the charter of that county. The charter fixes the salary of each of the supervisors at one thousand two hundred dollars ($1,200) per year. . . . Pending amendments to the charter fail to provide for the compensation of the supervisors, and if ratified there will be confusion and uncertainty as to what the salary of the supervisors will be. In order to avoid such uncertainty and to preserve the regularity and continuity of county business it is necessary to make the provisions of the statute and the charter uniform *to the end that the compensation of the supervisors of said county will remain unaltered if the county charter amendments are ratified by the Legislature.*" The Legislature ratified the charter as amended.

Shortly after the regular session of the Legislature convened in 1947 the governor called the Legislature into special session known as the 1947 First Extra Session, mainly for the purpose of considering the passage of what became the Collier-Burns Highway Act of 1947. This act had to do with providing for a system of public streets and highways in the state, for the financial support thereof, including the levying of taxes therefor, and for the repeal of numerous existing legislative enactments made necessary thereby. The act was passed. It provided for a primary and a secondary system of county roads and for the appointment in each county of a road commissioner by the board of supervisors. It created a fund known as "The Highway Users Tax Fund," and appropriated all funds to be placed therein for the acquisition of rights of way for, and

the construction and maintenance of, public streets and highways throughout the state. It provided for appropriations to counties from this fund for the maintenance of the county road systems, and in particular directed regular apportionments to each county of $20,000 per year, in quarterly payments, which amounts were to be used "exclusively for engineering costs and administrative expenses in respect to county roads." The county supervisors were to fix the salary of the road commissioner, which would be chargeable against this same fund; the board was to determine general policies with respect to county highway matters which should be carried out and administered by the road commissioner. By section 2010 the act provided: "*When not otherwise provided by law*, each supervisor who uses a privately owned automobile in the discharge of duties imposed upon him in connection with the county road system shall receive for the performance of such duties in addition to the compensation paid him as supervisor, but not for the same mileage for which an allowance is otherwise made by law, six cents ($0.06) per mile for mileage traveled, but not more than three hundred dollars ($300) in any one year, which shall be chargeable against the twenty thousand dollars ($20,000) annual apportionment to the county under the first subdivision of Section 2111." (Italics added.) The claim of the petition here is based upon this provision for mileage.

By the express provisions of the Collier-Burns Act the provisions with which we are here concerned became effective on the 91st day following the adjournment of the extra session. That session adjourned June 24, 1947. The act fixing the salaries of Tehama County supervisors, above referred to, being emergency legislation went into effect immediately. It was approved by the governor February 4, 1947, and thus was in effect when the Collier-Burns Act was passed.

Compensation of county officers and employees has frequently received the attention of the courts. Numerous methods of payment have from time to time been adopted by legislative and charter enactments. With respect to supervisors' salaries the Supreme Court in *Chapin* v. *Wilcox*, 114 Cal. 498, p. 500 [46 P. 457], said concerning the various methods that had been used:

"In some counties supervisors receive a fixed, annual salary, without any provision for mileage, while in others mileage to a limited amount is allowed them. In some they receive a *per diem* without any limitation upon its amount, and a mileage

not to exceed a certain amount; and in some there is a limit upon each, while in others the limit is upon the *per diem* alone. Of those that receive a *per diem* and mileage there is in some a limitation upon one, and in some a limitation upon the other, and in some a limit upon neither. The provision for these officers in the forty-second class differs from all the others in that the limit to the entire compensation is made definite and precise. After determining that the basis upon which their compensation is to be fixed shall be a *per diem* and mileage, and fixing the amount of each of these elements, the legislature has declared that '*all* of which compensation in the aggregate shall not exceed four hundred dollars *per annum* each,' thus leaving little, if any, room for construction. It would be difficult to express in more explicit language that the entire amount which a supervisor in this class of counties shall receive in any one year for the services required of him by law, or by virtue of his office, is four hundred dollars. Traveling to and from his residence to the county seat is as much a part of the services required of him as is the sitting in the council chamber of the board, and the compensation for these services has been fixed by the legislature in the foregoing language.''

Holding that the provision for mileage was part of the compensation, the court affirmed the judgment of the trial court, refusing to direct payment of a claim presented to the county auditor for mileage other than that expressly provided for in the act.

It is apparent that by the Tehama County charter, both before and after the amendments of 1946, the electors of that county had adopted two plans for the compensation of county officers and employees. With respect to supervisors they adopted the plan of computing their compensation, by charter provision, at a sum which in their judgment was sufficient to include reasonable compensation for their time expended in the discharge of their duties and a recompense for any outlays necessary in the performance of those duties. On the contrary, with respect to other county officers and employees whose salaries were to be fixed by the board, the electors adopted a different plan and directed the supervisors expressly, by section 5 of article IV, to provide from time to time for, and to limit the amount of, mileage, transportation and traveling expenses. We are, of course, not concerned with the reasoning lying behind these charter provisions. When the charter was

amended so as to strike down the provision for compensation of the supervisors the electors acted in contravention of the plain constitutional mandate, hereinbefore quoted, to the effect that the charter should provide for the compensation of supervisors. While legislative provisions for their compensation were superseded so long as the charter did provide therefor, when and if the charter failed so to do the duty of providing for such compensation fell upon the Legislature under the provisions of section 5 of article XI of the Constitution, which commanded the Legislature to provide for county boards of supervisors and to regulate their compensation. It was therefore competent for the Legislature, in view of the situation created by the charter amendments of 1946, to make provision for the compensation of those officers of the county. (*Jones* v. *De Shields,* 187 Cal. 331 [202 P. 137].) As we have said, the Legislature did this by the emergency legislation noted. But the nature of the provision thus made must now be considered.

Bearing in mind that by language unmistakable as to its meaning the compensation of supervisors fixed by the charter included, in a flat salary provision, all compensation of whatever kind or character that was to be paid to them, and expressly prohibited the payment to them of any mileage, transportation or other expenses, we turn to the emergency legislation to determine whether or not this prohibition against mileage was carried into the legislative act, or, in other words, whether or not the Legislature itself in turn, adopted that method of computing the salary which the charter had used. The question is answered by an express declaration of legislative intent so clear as to make construction unnecessary and therefore improper. The Legislature said that the charter had fixed the salary of each supervisor at $1,200 per year, and that in view of the pending amendments they wished to avoid any uncertainty, and by fixing the salary themselves preserve regularity and continuity of county business, and that they passed the act to the end that the compensation of supervisors of that county would *remain unaltered* if the charter amendments were ratified. It therefore follows that the Legislature did adopt the method of paying supervisors which had been used under the charter, and that the $1,200 per year salary included, as a part of that salary, payment for any mileage, and excluded the possibility that any claim for mileage for supervisors could be allowed or paid.

When the Collier-Burns Highway Act became law, the same

Legislature that passed it had made, as we have seen, provisions forbidding payment of mileage to Tehama County supervisors. And in respect to the payment of mileage under section 2010 of the Collier-Burns Act to county supervisors generally, the Legislature made such payments dependent upon there being no provision otherwise by law. Said the Legislature then, these payments should be made "when not otherwise provided by law." With respect to Tehama County supervisors the Legislature had provided otherwise, and, therefore, by the plain terms of the legislative enactments being considered, mileage to Tehama County supervisors under that section of the Collier-Burns Highway Act could not be paid. It should be stated that section 2010, *supra,* was amended in 1949 by eliminating the introductory clause which by its presence made the provisions of the section inapplicable to Tehama County supervisors.

For the reasons given the order appealed from is affirmed.

Adams, P. J., and Peek, J., concurred.